Frank P. Holloway v. Commissioner.
Holloway v. Commissioner
Docket No. 21532.
United States Tax Court
1951 Tax Ct. Memo LEXIS 22; 10 T.C.M. (CCH) 1257; T.C.M. (RIA) 51359; December 12, 1951
*22 1. Petitioner's use of the corporation's funds to the extent of $37,500 to purchase, in 1944, certain shares of its capital stock which he later surrendered for cancellation and retirement, held, on facts, essentially equivalent to the distribution of a taxable dividend within the purview of section 115 (g), Internal Revenue Code. 2. One-half of the amounts paid by the corporation in the taxable years 1944 and 1945 for attorney's fees and court stenographer's fees in connection with a certain litigation were taxable to petitioner as dividend distributions in those respective years. Scott P. Crampton, Esq., and Dewey R. Roark, Jr., Esq., for the petitioner. Homer F. Benson, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding *23 involves deficiencies in income tax of $20,641.85 for the calendar year 1944 and $431.45 for the calendar year 1945. The principal issue is whether the respondent erred in taxing certain amounts received by petitioner in 1944 and 1945 from the Park Hosiery Mills, Inc. as the equivalent of distributions of taxable dividends within the purview of section 115 of the Internal Revenue Code. A second issue raises the question of the bar of the statute of limitations with respect to the year 1944. Some of the facts were stipulated and are found accordingly. Findings of Fact Petitioner is an individual residing at Knoxville, Tennessee. His individual income tax returns for the periods involved were filed with the collector of internal revenue for the district of Tennessee. The deficiency notice was mailed to him on October 15, 1948. Since 1939 petitioner has been associated with Park Hosiery Mills, Inc. (hereinafter referred to as the corporation), a Tennessee corporation organized in 1939 under the name of Crown Hosiery Mills. The corporation keeps its books and files its income tax returns on the accrual basis of accounting and by fiscal years ended June *24 30. At the time the corporation was formed, S. W. Duggan and petitioner agreed that their two families would each subscribe for one half the capital stock. Petitioner subscribed for 150 shares. On March 19, 1940 the corporation issued 300 shares of its no-par value common stock for $50 per share. Certificates representing 300 shares were issued as follows: No. of
Certifi-
Name
Shares
cate No.
S. W. Duggan
1
1
Margaret P. Duggan
149
2
Bruce K. Holloway
60
3
Frank P. Holloway
90
4
Margaret P. Duggan is the wife of S. W. Duggan, and Bruce K. Holloway is the son of petitioner. Bruce K. Holloway was in the military service during the periods here involved and did not participate in the corporation's activities. In July 1940 the stockholders elected petitioner, S. W. Duggan and Margaret P. Duggan directors. On July 15, 1940 the directors elected the following officers: President
Frank P. Holloway
Vice-President
Margaret P. Duggan
Secretary-Treasurer
S. W. Duggan
The salaries of both the president and the secretary-treasurer were fixed at $2,400 per year. On December 19, 1940 5 additional shares of the stock of the corporation *25 were issued to its superintendent, Leonard R. Smith. These 5 shares were evidenced by certificate number 5, which was signed by petitioner and S. W. Duggan. On May 30, 1941 8 additional shares were issued to R. P. Oppenheimer, evidenced by certificate number 6, which was signed by Margaret P. Duggan and S. W. Duggan as vice-president and secretary-treasurer, respectively. The 5 shares issued to Smith were later acquired by petitioner. The 8 shares issued to Oppenheimer were acquired by the Duggans. A controversy arose regarding the issuance of the stock to Oppenheimer, and in November 1941 petitioner filed a suit in Chancery Court against the Duggans and Oppenheimer to enjoin the voting of the 8 shares issued to Oppenheimer. S. W. Duggan made a claim against the corporation for salary and the corporation was made a party to the proceeding. After the filing of the suit S. W. Duggan never again went to the mill to render service to the corporation. Late in 1944 counsel for the Duggans made an offer on their behalf as a basis for settling the Chancery suit. Under date of November 8, 1944 a letter was sent to the Duggans by petitioner, reading as follows. "JOEL H. ANDERSON Attorney *26 at Law Knoxville, Tenn., "November 8th, 1944 "Mr. S. W. Duggan Mrs. Margaret P. Duggan Knoxville, Tennessee
"Dear Mr. and Mrs. Duggan: "Through your attorneys you have submitted to me the proposition hereinafter set out for the purpose of settling and compromising the issues now pending between us in the Chancery Court, styled Frank P. Holloway vs. S. W. Duggan et al., to-wit: I "You offer to sell, transfer and deliver 158 shares, free and clear of all incumbrances, of the common stock of the Park Hosiery Mills at the price of $37,500.00, and to approve an order disposing of the above mentioned case, whereby the $800.00 now in the hands of the Clerk and Master will be returned to the treasury of the Park Hosiery Mills and the Park Hosiery Mills will pay all of the costs in said case. The purchase price above mentioned contemplates a full and complete payment for the stock and a settlement and discharge of any and all claims which you may have against the Park Hosiery Mills. II "Upon the other hand, you offer to purchase 155 shares of the common stock of the Park Hosiery Mills, free and clear of all incumbrances, at the price of $37,500.00, the $800.00 now in the *27 hands of the Clerk and Master to be returned to the treasury of the Park Hosiery Mills, and all of the costs of the case above mentioned to be paid by the corporation. Any and all claims against the Mills by the owners of the 155 shares, to be cancelled and discharged. III "I accept the first proposition above mentioned, and direct that the 158 shares of stock, properly endorsed in blank, be delivered to the Park National Bank, Knoxville, and upon the delivery of said stock to said Bank, the Bank will pay to you said sum of $37,500.00. "Along with this letter, I am submitting to your attorneys an order disposing of the suit in the Chancery Court, along the lines above stated. "Yours truly, (Sgd.) Frank P. Holloway "JHA:pm "By Joel H. Anderson, Atty." On November 8, 1944 a check to the order of the Park National Bank in the amount of $37,500, signed "Park Hosiery Mills, Inc., F. P. Holloway, Pres.," was delivered to the Park National Bank. The certificates representing 158 shares of the capital stock theretofore issued in the names of the Duggans and Oppenheimer and endorsed in blank were delivered to the Park National Bank in exchange for a cashier's check in the amount *28 of $37,500. On November 24, 1944 a consent decree was entered dismissing the Chancery suit. The Court further ordered the payment to the Park Hosiery Mills, Inc. of the "sum of $800 deposited contemporaneous [sic] with the filing of the original bill and that the Park Hosiery Mills, as Principal, and Elizabeth K. Holloway, surety on complainant's prosecution bond, pay all the costs of this cause for which execution is awarded." A meeting of the stockholders of the corporation was held on November 22, 1944. Petitioner was the only stockholder present. The minutes of the meeting, so far as material, set forth the following: "The President, F. P. Holloway, reported that acting for and on behalf of the Corporation, he had purchased for retirement, the capital stock heretofore owned by Mrs. M. P. Duggan, being 149 shares of said stock, and the capital stock heretofore owned by S. W. Duggan, being one share of the capital stock, and the 8 shares heretofore issued to Dr. R. P. Oppenheimer and recently in dispute, at the price of $29,500.00, and that he had settled and adjusted with S. W. Duggan all claims which he had against the corporation for salary or otherwise, the said S. W. *29 Duggan's salary claim amounting to the sum of $8000.00, all at the total sum of $37,500.00; "And it appearing to the stockholders that the action taken by said President for the purchase of said stock for and on behalf of the corporation, and the liquidation of the claims of the said S. W. Duggan were and are in the interest and to the advantage of the Corporation, upon motion duly made and seconded, the action of the President, as above outlined, was by a unanimous vote ratified and confirmed, and the stockholders directed that said stock so purchased be cancelled and retired and that the capital stock of the Corporation be reduced to 155 shares, the same being the shares now owned and represented at this meeting by F. P. Holloway and by Bruce K. Holloway." The journal of the corporation under date of November 8, 1944, but subsequent to entries dated November 27, reflects the following entries: a debit to capital stock of $7,500, a debit to surplus of $22,000 and a credit to cash of $37,500. On December 8, 1944, the corporation paid the sum of $1,250 to Joel H. Anderson, attorney. On January 12, 1945 the corporation paid Joel H. Anderson an additional $1,250. On January 29, 1945 the *30 corporation paid the amount of $194 to petitioner to reimburse him for the expenses of a court stenographer in the Chancery suit. Each of these payments was treated as an expense on the books of the corporation. As of June 30, 1944 and 1945, the corporation's net worth was divided between capital and surplus as follows: 1944
1945
Capital Stock
$15,250.00
$ 7,750.00
Surplus
59,795.94
50,916.14
Net Worth
$75,045.94
$58,666.14
In the fiscal year ended June 30, 1944 the corporation realized a net profit of $19,216.62, and for the fiscal year ended June 30, 1945, a net profit of $20,960.27. The entire amount of surplus represented earned surplus of the corporation. As of June 30, 1944 the balance sheet of the corporation shows cash on hand of $44.78 and in bank of $16,901.78. The corporation declared no dividends prior to the year 1946. In determining the deficiency for the taxable year 1944 the respondent taxed to petitioner the amount of $38,750, being the aggregate of the sum of $37,500 paid to the Duggans for the 158 shares of stock of the corporation and the $1,250 paid to Joel H. Anderson, attorney, as dividend distributions. In determining *31 the deficiency for the taxable year 1945 the respondent taxed to petitioner the sum of $1,444, being the aggregate of $1,250 which the corporation paid to Joel H. Anderson, as attorney's fee, and $194 which it paid to petitioner to reimburse him for cost of court stenographer's fee, as distributions essentially equivalent to taxable dividends. The use by petitioner in 1944 of the sum of $37,500 of funds of the corporation for the purchase of 158 shares of its capital stock, which he later surrendered for cancellation and retirement, was a distribution essentially equivalent to a taxable dividend in that year. The payments of $1,250 in 1944 and $1,250 in 1945 made by the Park Hosiery Mills, Inc. to Joel H. Anderson were for services rendered for and on behalf of the corporation and the petitioner individually. The payment of $194 to petitioner in 1945 to reimburse him for court stenographer's fees in the Chancery suit was for the benefit of both the petitioner and the corporation. One half of such payments made by the corporation for the benefit of petitioner were distributions essentially equivalent to taxable dividends in those respective years. Opinion The primary question *32 presented is whether corporate funds used by petitioner in the respective years 1944 and 1945 are taxable to him as being essentially equivalent to taxable dividends, as contended by the respondent. Petitioner denies this contention. In substance, it appears that petitioner neither actually nor constructively received any part of the payments involved. The payments were made in compromise of a litigation, to which the corporation was a party litigant, whereby the corporation acquired 158 shares of its capital stock from the Duggans and received a discharge of a claim for salary made by S. W. Duggan, and for attorney's fees and stenographer's fees in connection with the litigation. The issue is factual. The oral testimony is somewhat conflicting. Summarizing the pertinent facts, it appears that in 1939 petitioner and S. W. Duggan agreed to organize the Crown Hosiery Mills, the name of which was later changed to Park Hosiery Mills, Inc. They agreed that the family of each would subscribe for 150 shares of the no-par value common stock, the value of which was fixed at $50 per share. Certificates representing 90 shares were issued in the name of petitioner and 60 shares in the name of *33 his son, Bruce K. Holloway. A certificate for one share was issued in the name of S. W. Duggan and a certificate for 149 shares was issued in the name of Margaret P. Duggan. In July 1940 petitioner was elected president, Margaret P. Duggan vice-president and S. W. Duggan secretary-treasurer. These three constituted the board of directors. The salaries of the president and secretary-treasurer were fixed at $2,400 per annum. Later in 1940 a certificate for 5 shares was issued in the name of Leonard R. Smith, and on May 30, 1941 a certificate for 8 shares was issued to R. P. Oppenheimer. The issuance of these latter 8 shares gave rise to dissension. Petitioner then instituted suit against the Duggans and Oppenheimer to enjoin the voting of the 8 shares. S. W. Duggan filed an answer in said suit alleging a claim for unpaid salary, and the corporation was brought in as a party. None of the pleadings involved in that suit were offered in evidence, and other than as above set forth the issues involved were not disclosed. During the pendency of that suit, counsel for the Duggans made an offer to the petitioner either to buy 155 shares which the petitioner owned or controlled, or to sell the *34 158 shares they owned or controlled for $37,500, with the seller releasing all claims against the corporation. By letter dated November 8, 1944 petitioner elected to purchase the 158 shares, and directed that the certificates, endorsed in blank, be delivered to the Park National Bank in exchange for the sum of $37,500. Such procedure was carried out. On November 8, 1944 petitioner drew a corporate check payable to the order of the Park National Bank, which issued a cashier's check in payment for the stock. The balance sheet of the corporation, as of June 30, 1944, shows cash in bank of $16,901.78. What arrangement was made with the bank to provide the necessary funds is not disclosed. On November 22, 1944, after petitioner had acquired the 158 shares of capital stock, he held a stockholders' meeting at which he was the only stockholder present. The minutes of that meeting show that the president, petitioner herein, reported that, acting for and on behalf of the corporation, he had purchased for retirement the 158 shares for $29,500 and had settled a claim of S. W. Duggan for salary of $8,000, making a total of $37,500, and on motion duly carried the action of the president was ratified *35 and confirmed, and the stockholders directed that the stock so purchased be cancelled. Entries were made on the corporate records accordingly. We think the self-serving statements of petitioner, as contained in the minutes of the stockholders' meeting of November 22, 1944, are of little or no probative value. Petitioner's letter of November 8, 1944 dispels any notion that petitioner, in purchasing the 158 shares, was acting for and on behalf of the corporation. There is nothing contained in that letter binding in any way upon the corporation. No corporate resolution authorizing the purchase and retirement of any shares of the capital stock was adopted prior to November 22, 1944. S. W. Duggan testified that the offer was made to petitioner to buy or sell, and not to the corporation. The consideration fixed by Duggan was approximately the book value of the shares as shown by the balance sheet of June 30, 1944. The $37,500 was paid for the transfer of the 158 shares. Petitioner's allocation of the amount of $8,000, as a payment in discharge of an alleged claim of S. W. Duggan for salary, is of no importance. Nor was petitioner's use of a corporate check in connection with the transaction *36 any indication that the corporation was the purchaser of the shares of its capital stock. All that check imports is that petitioner was using corporate funds in payment of his own purchase. Upon petitioner's acquisition of the 158 shares of the capital stock of the corporation he owned or controlled all of the issued and outstanding shares. Subsequently he caused all of the outstanding shares except 155 to be cancelled and retired. Section 115 (g) of the Internal Revenue Code provides that if a corporation redeems its stock at such time and in such manner as to make the distribution in redemption essentially equivalent to a taxable dividend, the amount so distributed, to the extent that it represents a distribution of earnings and profits, is to be treated as a taxable dividend. The application of that section depends on the facts and circumstances of each case. The net effect of the distribution, rather than the motives and plans of the taxpayer or the corporation, has been the test applied by the courts. Flanagan v. Helvering, 116 Fed. (2d) 937; Smith v. United States, 121 Fed. (2d) 692; Boyle v. Commissioner, 187 Fed. (2d) 557, *37 certiorari denied 342 U.S. 817 (October 8, 1951). There is no contention that the earnings and profits of the corporation were not sufficient to bring the distribution within section 115 (g) of the code, provided the other requirements of that section were met. The tax consequences of a transaction depend upon what was actually done, not upon what could have been done. Wall v. United States 164 Fed. (2d) 462. Here, we think, petitioner actually engaged in two separate and distinct transactions, one transaction being the purchase of the stock from the Duggans, and the other transaction being the surrender of the shares for cancellation and retirement. The facts and circumstances disclosed by this record leave no doubt in our mind that the use of corporate funds by petitioner in the amount of $37,500, with which he purchased in the taxable year 1944 the 158 shares owned and controlled by the Duggans, and the subsequent surrender by him of such shares for cancellation and retirement, were essentially equivalen to a distribution of a taxable dividend within the meaning of section 115 (g) of the code. Cf. Wall v. United States, supra. The respondent *38 properly determined that the amount of $37,500 was taxable income to petitioner in the year 1944. In the taxable years 1944 and 1945 the corporation issued to Joel H. Anderson two checks in the amount of $1,250 each. Anderson, an attorney, represented petitioner and the corporation in the aforementioned Chancery suit. In 1945 the corporation reimbursed petitioner in the sum of $194, to cover court stenographic fees he advanced in connection with the Chancery suit. Since both petitioner and the corporation were parties to such suit, the expense incurred was for the benefit of both. While the record does not furnish any satisfactory basis upon which a precise allocation of these expenses can be made, we think that an allocation on an equal basis would be fair and just and have so found as a fact. Cf. Cohan v. Commissioner, 39 Fed. (2d) 540; Mills Estate, Inc., 17 T.C. - (November 30, 1951). Therefore, we hold that one half the amount of $1,250 in 1944 and one half the amount of $1,444 in 1945, paid out of corporate funds, constitute distributions essentially equivalent to a taxable dividend in those respective taxable years. The issue of the bar of the statute of *39 limitations with respect to the taxable year 1944 falls, in view of our holding that petitioner was taxable in 1944 on the amount of $38,125, since the amount included exceeds the amount of income reported by more than 25 per cent. Section 275 (c) of the Internal Revenue Code. Decision will be entered under Rule 50.